IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-655

 No. COA21-184

 Filed 7 December 2021

 Iredell County, No. 10-JB-203

 IN THE MATTER OF: Z.P.

 Appeal by Juvenile from orders entered 30 July 2020 and 27 August 2020 by

 Judge Carole Hicks in Iredell County District Court. Heard in the Court of Appeals

 22 September 2021.

 Attorney General Joshua H. Stein, by Deputy General Counsel Tiffany Lucas,
 for the State.

 Appellate Defender Glenn Gerding, by Assistant Appellate Defender Amanda
 S. Zimmer, for the Juvenile-Appellant.

 DILLON, Judge.

¶1 Z.P. (“Sophie”)1 appeals from the trial court’s 30 July 2020 order adjudicating

 her delinquent (“Adjudication Order”) and the 27 August 2020 order sentencing her

 to a Level 1 Disposition (“Disposition Order”).

 I. Background

¶2 This matter involves two petitions filed against Sophie for statements she

 1 Pseudonyms are used to protect the identity of the juveniles in this case. See N.C.
 R. App. P. 42(b)(1).
 IN RE: Z.P.

 2021-NCCOA-655

 Opinion of the Court

 made in September 2019 at her school to fellow students when she was eleven years

 old.

¶3 One petition alleged a felony, specifically that she communicated a threat of

 mass violence on educational property by stating that she was going to blow up her

 school. The other petition alleged a misdemeanor, specifically that she

 communicated a threat of physical violence towards another student, Cameron.

¶4 The trial court adjudicated Sophie delinquent, finding that she committed

 both offenses and imposed a Level One disposition. Sophie appealed to our Court,

 essentially contending that the State failed to present sufficient evidence to prove

 the allegations contained in either petition.

 II. Preservation of Arguments

¶5 The State contends that Sophie’s counsel did not preserve her arguments

 regarding the sufficiency of the State’s evidence.

¶6 Sophie argues that our Court should address her sufficiency arguments (1) by

 considering N.C. Gen. Stat. § 7B-2405(6) (2019) a statutory mandate or (2) by

 invoking Rule 2 of our Rules of Appellate Procedure. Section 7B-2405(6) states that

 “[i]n [an] adjudicatory hearing, the court shall protect [a juvenile’s rights, including

 a]ll rights afforded adult offenders except the right to bail, the right of self-

 representation, and the right of trial by jury.” We conclude that Section 7B-2405(6)

 does not preserve Sophie’s argument on appeal. Notwithstanding, we exercise our
 IN RE: Z.P.

 2021-NCCOA-655

 Opinion of the Court

 discretion to invoke Rule 2 of our Rules of Appellate Procedure to review Sophie’s

 arguments. In doing so, we note that the State was not prejudiced by the failure of

 Sophie’s counsel to formally move to dismiss at the close of all the evidence and that

 it is obvious from the transcript that Sophie’s defense rested largely on the

 insufficiency of the State’s evidence.

 III. Analysis

¶7 At the juvenile hearing, the State called as witnesses four of Sophie’s

 classmates who heard one or more of Sophie’s statements. The State also called the

 assistant principal and resource officer, both of whom investigated the matter. On

 appeal, Sophie argues that the State failed to present sufficient evidence to support

 the allegations in each of the two petitions. As in other types of cases, our Supreme

 Court has held that in a case where a petition is filed alleging that a juvenile has

 committed a criminal act, the standard of review is as follows:

 This Court reviews de novo a trial court’s denial of a motion
 to dismiss for insufficiency of the evidence to determine
 whether there is substantial evidence of each essential
 element of the offense charged and of the defendant being
 the perpetrator of the offense.

 Substantial evidence is relevant evidence that a reasonable
 person might accept as adequate, or would consider
 necessary to support a particular conclusion.

 All evidence is viewed in the light most favorable to the
 State and the State receives the benefit of every reasonable
 inference supported by that evidence.
 IN RE: Z.P.

 2021-NCCOA-655

 Opinion of the Court

 In re J.D., 376 N.C. 148, 155, 852 S.E.2d 36, 42 (2020) (internal citations and

 quotation marks omitted). We address Sophie’s sufficiency argument separately as

 to each petition.

 A. Threat of Mass Violence to Educational Property

¶8 The State filed a juvenile petition alleging that Sophie violated Section 14-

 277.6 of our General Statutes by “willfully and feloniously [ ] threaten[ing] to commit

 an act of mass violence on an educational property by stating that she was going to

 blow up the school [in the presence of four of her classmates.]” As set forth below,

 the evidence is uncontradicted that Sophie did make a statement to the effect that

 she was going to blow up the school. However, Sophie argues that there was

 insufficient evidence that her threat was a “true threat,” something that must be

 proven under Section 14-277.6.

¶9 The United States Supreme Court has concluded that an anti-threat statute

 requires the government to prove a “true threat.” Watts v. United States, 394 U.S.

 705, 708 (1969). That Court has explained that a true threat, for purposes of

 criminal liability, depends on both how a reasonable hearer would objectively

 construe the statement and how the perpetrator subjectively intended her statement

 to be construed. Elonis v. United States, 575 U.S. 723, 737-38 (2015).

¶ 10 However, there seems to be a split in cases construing criminal anti-threat
 IN RE: Z.P.

 2021-NCCOA-655

 Opinion of the Court

 statutes concerning exactly what the State must prove regarding the perpetrator’s

 subjective intent to be. For instance, in an unpublished 2012 case, we held that, to

 satisfy the subjective intent prong, the State must merely prove that the perpetrator

 subjectively intended to communicate a statement to a hearer, irrespective of

 whether the perpetrator intended the communication to be construed as a threat:

 Defendant’s testimony showed that he knew about the
 history of the WANTED posters and was aware that they
 could be “threatening.” While defendant testified that he
 did not intend to make [the victim] fearful, his testimony
 showed that by handing out the posters, defendant
 intended to communicate with [the victim] and that
 communication caused [the victim] to fear for his own
 safety. Therefore, the WANTED posters distributed by
 defendant fall under the definition of a true threat, an
 unprotected category of speech.

 State v. Benham, 222 N.C. App. 635, 731 S.E.2d 275, 2012 N.C. App. LEXIS 979, *27

 (2012) (unpublished) (construing a misdemeanor stalking statute).

¶ 11 More recently, though, in a case that is currently pending at our Supreme

 Court, we held that the State must show that the perpetrator’s “subjective intent

 [was] to threaten a person or group of persons by communicating the alleged threat.”

 State v. Taylor, 270 N.C. App. 514, 561, 841 S.E.2d 776, 816 (2019).

¶ 12 In any event, we need not decide in this case whether the State’s burden here

 was to show Sophie subjectively intended to make a threat, or merely that she

 subjectively intended to make a statement that constituted what others thought was
 IN RE: Z.P.

 2021-NCCOA-655

 Opinion of the Court

 a threat.

¶ 13 For the reasoning below, we conclude that the State’s evidence failed the

 objective portion of the “true threat” test. In other words, the State did not meet its

 burden of showing that an objectively reasonable hearer would have construed

 Sophie’s statement about bombing the school as a true threat.

¶ 14 The State’s evidence essentially showed as follows:

¶ 15 Three of Sophie’s classmates (Madison, Tyler, and Caleb) each testified to

 hearing Sophie threaten to blow up the school, though none of them testified that

 they thought she was serious when she made the threat.

¶ 16 Madison testified that Sophie talked about bombing the school. Madison

 testified that she did not think Sophie was serious when making the statement, and

 Madison did not report the threat to any adult.

¶ 17 Tyler testified that Sophie “said something about a bomb” and said “she was

 going to blow up the school.” Tyler offered in a joking manner to help her build the

 bomb and stated that he “thought it was just a joke.”

¶ 18 Caleb also heard Sophie’s threat about blowing up the school but was

 equivocal about his perception of Sophie’s seriousness, stating that her statement

 was “either [ ] a joke or it could be serious.”

¶ 19 The State’s evidence may create a suspicion that it would be objectively

 reasonable for Sophie’s classmates to think Sophie was serious in making her threat.
 IN RE: Z.P.

 2021-NCCOA-655

 Opinion of the Court

 But we do not believe that the evidence is enough to create an inference to satisfy the

 State’s burden. Indeed, none of Sophie’s classmates who heard her statement

 believed that Sophie was serious, with most of them convinced that she was joking.

 She had made outlandish threats before, never carrying out any of them. See Watts,

 394 U.S. at 707-08 (stating that the “context” in which the alleged threat was made

 must be considered); see also Taylor, 270 N.C. App. at 562, 841 S.E.2d at 816-17

 (holding that the context in which the statement is made must be considered to

 evaluate whether the hearers would think the statement was a “serious expression

 of an intent to kill or injure [others]”).

¶ 20 We note that there was evidence that Sophie told her fellow students that

 there may be a school shooting and that they could protect themselves from the

 shooter if they wore a certain color. However, the State’s petition only makes

 allegations about a threat to “blow up” the school, and we only evaluate the

 sufficiency of the evidence as to that allegation.

¶ 21 Accordingly, we reverse the trial court’s judgment with respect to this petition.

 B. Communicating a Threat to Harm a Fellow Student

¶ 22 In the other petition, the State alleged that Sophie “unlawfully and willfully

 threaten[ed] to physically injure the person or damage the property of [Cameron]”

 by stating that “she was going to kill him with a crowbar and bury him in a shallow

 grave.” Again, there is overwhelming evidence that Sophie made this statement.
 IN RE: Z.P.

 2021-NCCOA-655

 Opinion of the Court

¶ 23 The State alleged that Sophie violated Section 14-277.1 of our General

 Statutes which states that a person is guilty of a misdemeanor if:

 1. She “willfully threatens to physically injure” another;

 2. She communicates the threat orally to the other person;

 3. A reasonable hearer would “believe that the threat is likely to be carried
 out;” and

 4. The hearer actually believes that the threat will be carried out.

 N.C. Gen. Stat. § 14-277.1(a) (2019).

¶ 24 Here, the State’s evidence showed that Sophie told another student that she

 was going to physically injure Cameron when Cameron was in earshot. Specifically,

 the State’s evidence was as follows:

¶ 25 Cameron testified that Sophie had physically threatened him previously; that

 he heard Sophie make the statement that she was going to hit him with a crowbar;

 and that Sophie is larger and stronger than he is. Cameron did testify that Sophie

 may have been joking but also that he believed that Sophie could hit him with a

 crowbar. He also testified that he was scared of Sophie because of her past threats.

¶ 26 Madison testified that she heard Sophie threaten to hit Cameron with a

 crowbar and bury him in a shallow grave.

¶ 27 The assistant principal testified that Cameron seemed very fearful of Sophie

 and that Sophie admitted to not liking Cameron and wishing he were dead.
 IN RE: Z.P.

 2021-NCCOA-655

 Opinion of the Court

¶ 28 The trial court found that Sophie made the statement “in a manner that was

 intended for [Cameron] to hear it” and that Cameron believed Sophie could carry out

 the threat regarding the crowbar.

¶ 29 We conclude the evidence, in the light most favorable to the State, was

 sufficient to sustain the trial court’s finding that Sophie violated Section 14-277.1.

 Taken in this light, Cameron took her threat about hitting him with a crowbar and

 burying him in a shallow grave seriously. Further, it would be reasonable for a

 person in his position to take the threat seriously, in that Cameron is a person who

 is smaller in stature than Sophie and had been physically threatened by her on other

 occasions.

¶ 30 We, therefore, affirm the trial court’s judgment regarding the petition alleging

 a violation of Section 14-277.1.

 IV. Conclusion

¶ 31 Regarding the Adjudication Order, we affirm as to the finding that Sophie

 violated Section 14-277.1 (communicating a threat). However, we reverse as to the

 finding that Sophie violated Section 14-277.6 (communicating a threat of mass

 violence on educational property).

¶ 32 Accordingly, we vacate the trial court’s Disposition Order and remand to allow

 the trial court to reconsider the disposition in light of our reversal of its finding that

 Sophie violated Section 14-277.6. On remand, the trial court may enter a disposition
 IN RE: Z.P.

 2021-NCCOA-655

 Opinion of the Court

up to a Level 1, as it previously did.

 AFFIRMED IN PART; REVERSED IN PART; VACATED AND REMANDED

IN PART.

 Judges COLLINS and WOOD concur.